IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Stephen R. C., | ) | Case No. 9:23-cv-04752-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on an action brought by Plaintiff pursuant to 42 U.S.C. Section 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act.[1]  In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge Molly H. Cherry for pre-trial proceedings.

On July 30, 2024, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that the Commissioner's decision be affirmed.  [Doc. 15.]  The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so.  [*Id.* at 30.]  Plaintiff filed objections to the Report, and the Commissioner filed a reply.  [Docs. 16; 17.]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of any portion of the Report to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

Under 42 U.S.C. § 405(g), the Court's review of the Commissioner's denial of benefits is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* (internal quotation marks omitted). In reviewing the evidence, the Court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* Consequently, even if the Court disagrees with the Commissioner's decision, the Court

2

must uphold it if it is supported by substantial evidence.  *Blalock v. Richardson*, 483 F.2d

773, 775 (4th Cir. 1972).

## DISCUSSION[2]

In his initial brief, Plaintiff argued that ALJ's RFC analysis was not supported by

substantial evidence in that "[m]ultiple medical providers made statements in [Plaintiff's]

record with specific restrictions which undermined the ALJ's medium RFC" and the "ALJ

failed to properly discuss any of these restrictions."  [Doc. 11 at 16.]  Specifically, Plaintiff

challenged the ALJ's consideration of the opinion evidence of Dr. Annette Macannuco-

Winslow, Dr. W. Jay Krompinger, Dr. Jerrold Kaplan, Dr. Howard Lantner, and the state

agency chart reviewers.  [*Id*. at 16–18.]  Plaintiff contended the ALJ, without adequate

support, constructed "a 'less restrictive' RFC based upon only her interpretation of the

evidence and her general premise that [Plaintiff] was exaggerating his symptoms."  [*Id*. at

18.]    Plaintiff also challenged the ALJ's evaluation of his subjective complaints under

SSR 16-3p.  [*Id*. at 18–20.]    Plaintiff contended "the ALJ used 'inconsistencies' in the

record to ignore [Plaintiff's] testimony and to discredit the opinions of the medical

professionals who treated him and offered work-related restrictions."  [*Id*. at 19.]  Plaintiff

argued the ALJ treated the RFC assessment and the evaluation of Plaintiff's symptoms

as a single assessment when they are, indeed, separate and distinct.  [*Id*. at 20.]  Plaintiff

further argued that substantial evidence does not support the ALJ's Step-5 findings that

Plaintiff had acquired skills transferable to the light occupational base.  [*Id.* at 20–21.]

---

[2] The Magistrate Judge provided an accurate and thorough recitation of the procedural and medical history, as well as the ALJ's findings, and the Court therefore will not repeat it here.

**The Magistrate Judge's Report**

In her Report, the Magistrate Judge finds the ALJ followed the statutorily required five-step sequential evaluation process to determine whether Plaintiff was disabled.  [Doc. 15 at 5.]   The Magistrate Judge states that Plaintiff challenged the ALJ's decision for three reasons: failing to properly evaluate medical opinion evidence, failing to properly evaluate his subjective complaints, and failing to make proper Step-5 findings.  [*Id*. at 6.] Upon review, however, the Magistrate Judge finds that remand is not warranted.  [*Id.* at 29.]

### *Medical Opinion Evidence*

The Magistrate Judge explains that Plaintiff contends the ALJ improperly "rejected" Dr. Macannuco-Winslow's opinion because, at the time the opinion was issued, Plaintiff "had not exhausted all treatment modalities including injections and the use of a TENS unit."[3]  [*Id*. at 9 (internal quotation marks omitted).]  The Magistrate Judge explains that

> Plaintiff appears to argue that the ALJ erred because the ALJ's reference to Plaintiff's improvement after October 2012 somehow conflicted with the ALJ's earlier finding that Plaintiff's medical records were "relatively stable." ECF No. 11 at 16 (citing R.p. 27). Plaintiff fails to explain how this is error, much less why it warrants remand.

[*Id*. at 10 n.10.]  The Magistrate Judge notes that the ALJ "explained that 'treatment modalities including injections and the use of a TENS unit' in the years after Dr. Macannuco-Winslow's October 2012 opinion had 'proved to increase [Plaintiff's] functional abilities'" and that "Dr. Macannuco-Winslow's opinion was inconsistent with

---

[3] "Transcutaneous electrical nerve stimulation (TENS) uses low-voltage electrical currents to relieve pain."  Transcutaneous Electrical Nerve Stimulation (TENS), Cleveland Clinic, https://my.clevelandclinic.org/health/treatments/15840-transcutaneous-electrical-nerve-stimulation-tens (last visited Sept. 27, 2024).

evidence that Plaintiff was 'able to drive from Connecticut to [South] Carolina, work on cars and take care of his mother'—activities that further indicated Plaintiff was less limited than Dr. Macannuco-Winslow opined."  [*Id*. at 11 (second alteration in original).]  Thus, the Magistrate Judge finds that the ALJ sufficiently evaluated Dr. Macannuco-Winslow's opinion and that the Plaintiff failed to show why remand was warranted.  [*Id*.]

Regarding Dr. Krompinger's opinion, the Magistrate Judge notes that Dr. Krompinger provided only an assessment of whether Plaintiff could return to his prior employer and failed "to provide a functional assessment of what Plaintiff could 'still do despite [his] impairments' or whether he had 'one or more impairment-related limitations or restrictions' with respect to exertional or non-exertional abilities, as is needed to constitute a 'medical opinion' under the regulations."  [*Id*. at 12–13 (alteration in original).]  The Magistrate Judge also finds that, "because Dr. Krompinger's statement addressed an issue reserved to the Commissioner, the ALJ was not required to discuss supportability and consistency."  [*Id. at* 13.]

With respect to Dr. Kaplan's opinion, the Magistrate Judge finds that Plaintiff's arguments are unpersuasive because "the ALJ sufficiently evaluated Dr. Kaplan's opinion under the new regulations, such that the undersigned is not left to 'guess' at why the ALJ found it 'somewhat persuasive.'"  [*Id*. at 14.]  The Magistrate Judge notes that "the ALJ acknowledged that Dr. Kaplan's findings were supported by his examination of Plaintiff by recognizing that there was 'no doubt' Plaintiff's impairments limited him functionally," but that Dr. Kaplan's opinion was inconsistent with other evidence.  [*Id*. at 15.]  The Magistrate Judge explains that

Similar to Dr. Macannuco-Winslow's opinion, the ALJ explained Dr. Kaplan's opinion had been rendered in October

5

2012, "prior to the implementation of other treatment modalities such as injections, a TENS unit and additional physical therapy, which increased [Plaintiff's] functionality," and therefore did not account for his improvement with these treatments.

[*Id*.] To the extent Plaintiff argued that the ALJ improperly found Dr. Kaplan's opinion less persuasive because it did not address Plaintiff's ability to sit, stand, and walk, the Magistrate Judge finds the ALJ was well within her right to find the opinion less persuasive because these functions were not discussed. [*Id*. at 16.] The Magistrate Judge concludes that the ALJ did not ignore Dr. Kaplan's opinion as Plaintiff claims, but instead that the ALJ found it inconsistent with the record evidence that Plaintiff functionally improved over time. [*Id*.]

With respect to Physical Therapist Joseph Morelli ("PT Morelli"), who provided a functional capacity evaluation for Plaintiff, the Magistrate Judge finds that the ALJ sufficiently evaluated the opinion and found it was not entirely consistent with the medical evidence, and the ALJ reasonably declined to adopt PT Morelli's opinion that Plaintiff could only occasionally lift up to 37 pounds. [*Id*. at 16–17.]

Concerning Dr. Lantner, who performed an independent medical evaluation finding Plaintiff capable of light work with no repetitive bending and no frequent lifting over 20–25 pounds, the Magistrate Judge notes the ALJ found the opinion "somewhat persuasive," explaining that it was inconsistent with the record failing to take into consideration the additional treatment modalities that proved to be beneficial to Plaintiff's overall functionality, increasing his exertional abilities prior to the date last insured. [*Id*. at 17–18.]

6

With respect to the 2019 state agency opinion of Dr. James Upchurch, the Magistrate Judge finds Plaintiff's challenge to the ALJ's evaluation of the opinion unpersuasive. [*Id*. at 18–20.] Dr. Upchurch concluded Plaintiff could perform a range of light exertional work with postural, manipulative, and environmental limitations, but also explained that the

> "objective evidence is not totally consistent with [Plaintiff's] allegations," and, while it is "clear that the impairments are likely to produce some of the functional limitations that [Plaintiff] speaks of," those limitations are "not totally consistent/persuasive and would not preclude regular work activity on a sustained basis."

[*Id*. at 18–19 (first alteration in original).]  Further, the Magistrate Judge concludes that the ALJ explained that lesser restrictions were warranted considering the objective medical evidence and the inconsistencies in the Plaintiff's statements regarding his functional abilities.  [*Id*. at 19.]

### *Plaintiff's Subjective Complaints*

Regarding the ALJ's evaluation of subjective complaints, the Magistrate Judge notes that the ALJ followed the two-step process outlined in SSR 16-3p and discussed Plaintiff's testimony and the medical record in addressing both the objective and subjective evidence.  [*Id*. at 21–22.]   The Magistrate Judge notes that the ALJ explained her consideration of the medical evidence including MRI evidence, examination records, and treatment records, and pointed out various inconsistencies in Plaintiff's statements during the relevant period.  [*Id*. at 22–23.]   The Magistrate Judge also notes the ALJ pointed to Plaintiff's ability to perform daily activities that were inconsistent with the degree of limitation alleged.  [*Id*. at 23.]  The Magistrate Judge indicates that she is unable to find

reversible error in the ALJ's decision, which followed the proper analytical framework applicable to the evaluation of subjective complaints.  [*Id*.]

### Step-5 Analysis

With respect to the ALJ's Step-5 analysis, the Magistrate Judge disagrees with Plaintiff's argument that remand is warranted to obtain proper vocational expert testimony to determine whether Plaintiff has transferrable skills.  [*Id*. at 26.]  The Magistrate Judge notes that an analysis regarding transferrable skills is required if Plaintiff is limited to sedentary or light work and, because the Plaintiff was found to have the capacity for medium work, such an analysis is not necessary in this case.  [*Id*. at 27–28.]

**Plaintiff's Objections**

In his objections to the Report, Plaintiff argues that the Magistrate Judge erred in concluding that the ALJ's assessment of the opinions of record is supported by substantial evidence and in conformity with controlling regulations.  [Doc. 16 at 2.]  Plaintiff asserts that the ALJ is alone in her finding that Plaintiff could perform medium work and that she misapplied the concept of consistency with respect to the opinions of Dr. Macannuco-Winslow and Dr. Kaplan, and that she rejected numerous of their specific statements concerning Plaintiff's functionality without adequately explaining the rejection.  [*Id*.]

With respect to Dr. Macannuco-Winslow, Plaintiff contends the ALJ's final RFC does not appear to have incorporated any of the limitations proposed by Dr. Macannuco-Winslow, and the Report does not specify how, then, the ALJ found the opinion "somewhat persuasive."  [*Id*. at 3 (internal quotation marks omitted).]  Plaintiff maintains that "[t]he casual observation that subsequent treatment 'proved to increase his functional abilities' was just not specific enough to allow this Court to affirm."  [*Id*.]  Plaintiff argues

that the ALJ's conclusion that his complaints were overstated "seemed to drive the entire opinion" despite the fact that the regulations do not identify an ALJ's assessment of a claimant's subjective complaints as a proper basis for rejecting the findings of a medical provider.  [*Id.*]

With respect to Dr. Krompinger, Plaintiff takes issue with the Magistrate Judge's assertion that "'Dr. Krompinger's mere use of the words 'sedentary work' did not transform his statement into a medical opinion.'"  [*Id*. at 4 (quoting Doc. 15 at 13).]  Plaintiff argues that the Magistrate Judge's "assertion, that the statement was, 'at best . . . a proposal for Plaintiff's future employment,' may well have been a valid reason for the *ALJ* to reject the statement, but unfortunately, the ALJ declined to acknowledge it at all."  [*Id*. (alteration in original).]

Regarding Dr. Kaplan, Plaintiff "concedes that Dr. Kaplan did not assess his ability to sit, stand, and walk," but Plaintiff nonetheless argues that the Magistrate Judge "fail[s] to explain why this was a basis for the ALJ to discount his opinions as to lifting and bending."  [*Id*.]  Plaintiff contends that the Magistrate Judge "repeat[s] the ALJ's rationale regarding subsequent treatment, which was simply not supported by the rest of the record," and the Magistrate Judge fails to point to any discussion by the ALJ of improvement in Plaintiff's ability to lift or bend.  [*Id*. at 4–5.]

With respect to the opinion of PT Morelli, Plaintiff "concedes that the ALJ was not required to consider the portion of the opinion which found that he was 'not recommended for a work environment,'" but Plaintiff argues the ALJ failed to incorporate any of the specific functional limitations found by PT Morelli in her RFC assessment.  [*Id*. at 5.] Additionally, Plaintiff argues that the "Report does not point out any portion of the ALJ's

9

decision which explains how these lifting restrictions were undermined by other evidence in the record." [*Id*.]

Next, regarding the state agency opinions, Plaintiff argues that the Magistrate Judge errs in concluding that the brief explanation provided by the ALJ regarding the physicians' findings should survive review. [*Id*.] Although the ALJ summarized Plaintiff's medical records and pointed to several "inconsistencies," Plaintiff contends the decision failed to connect a single piece of evidence to any single function assessed by the state agency. [*Id*. at 5–6.]

Finally, Plaintiff contends the Magistrate Judge improperly accepts the ALJ's general notion that by acknowledging some reduction in Plaintiff's pre-onset functioning, she was implicitly accepting some portion of the various opinions. [*Id*. at 2.] Plaintiff argues that the ALJ rejected numerous specific statements as to specific functions without adequate explanation and that it was error for the Magistrate Judge to affirm based on the ALJ's supposed acceptance of the "gist" of these opinions. [*Id*. at 2–3 (internal quotation marks omitted).]

With respect to subjective complaints, Plaintiff argues that neither the Report nor the ALJ's decision acknowledges the gap between a fair representation of the cited activities—Plaintiff's interstate trips and ability to work on a car—and the final RFC assessment. [*Id*. at 6.] Plaintiff argues that the Magistrate Judge failed to acknowledge the requirement outlined in *Arakas v. Commissioner*, 983 F.3d 83, 99 (4th Cir. 2020), that the ALJ consider qualifying statements regarding the limited extent to which Plaintiff could perform the activities and failed to explain how his limited ability to carry out the activities supported her conclusion that he could sustain an eight-hour workday.

**Whether Substantial Evidence Supports the ALJ's RFC**

In this Order, the Court focuses on Plaintiff's objection that the Magistrate Judge incorrectly concludes that substantial evidence supports the ALJ's findings as to Plaintiff's RFC—specifically the finding that Plaintiff could perform medium work with only the particular limitations the ALJ identified. [Doc. 16 at 2.] The undersigned agrees with Plaintiff that the Court cannot determine that the ALJ's decision is supported by substantial evidence.

During the RFC assessment, the ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observation)" and "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (second alteration in original) (internal quotation marks omitted). "In other words, the ALJ must *both* identify evidence that supports [her] conclusion *and* build an accurate logical bridge from [that] evidence to [her] conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (second alteration in original) (internal quotation marks omitted), *superseded on other grounds as recognized in Rogers v. Kijakazi*, 62 F. 4th 872, 878–80 (4th Cir. 2023).

After reviewing the evidence, the ALJ determined that, with certain restrictions, Plaintiff retained the RFC to perform medium work, which requires the ability to lift up to 50 pounds at a time and frequently lift and carry objects up to 25 pounds.[4]  [R. 23]; 20 C.F.R. § 404.1567(c).  What is missing from the ALJ's decision, however, is an explanation of how the evidence supports this level of functionality, particularly considering that it exceeds the level identified in all of the medical opinions the ALJ discussed.[5]

For example, Dr. Kaplan opined in October 2012 that Plaintiff should lift no more than 20 to 25 pounds.  [R. 721.]  Dr. Macannuco-Winslow in October 2012 opined that Plaintiff could return to work with no lifting greater than 20 pounds.  [R. 826.]  In his functional capacity evaluation in September 2013, PT Morelli found that Plaintiff could occasionally lift up to 37 pounds, waist to shoulder, but he observed that during testing Plaintiff was unable to lift any weight from floor level and unable to carry any amount. [R. 724, 725, 729.]

Initially, the Court is unable to discern whether the ALJ concluded that these opinions were largely accurate at the time they were issued but that Plaintiff's lifting

---

[4] The restrictions were the Plaintiff could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs; could frequently, but not constantly, stoop; and could frequently, but not constantly, reach overhead with the left upper extremity.  [R. 23.]

[5] As support for the ALJ's RFC, the Commissioner points to the opinion of state agency medical expert Donna Stroud, M.D., who found on initial review that Plaintiff's physical impairments were not severe and found no associated limitations.  [Doc. 17 at 2 n.1 (citing R. 151–52).]  However, because the ALJ neither credited nor even specifically mentioned the substance of this opinion, this opinion is not a proper basis on which to affirm.  *See Canady v. Colvin*, No. 5:12-2507-KDW, 2014 WL 4063155, at *3 (D.S.C. Aug. 14, 2014) ("The court cannot look to post-hoc offerings to support the Commissioner's decision.").

abilities improved dramatically afterwards or, rather, whether the ALJ concluded that the opinions were not persuasive even as to Plaintiff's abilities at the time the opinions were given. Other than noting that Dr. Kaplan did not address Plaintiff's ability to sit, stand, and walk,[6] the ALJ did not appear critical of these opinions, noting only concerning the state agency consultants that the ALJ's "less restrictive" RFC was "appropriate in light of the objective medical evidence received at the hearing level and numerous inconsistencies in [Plaintiff's] statements regarding his functional abilities." [R. 29–31.] Given the ALJ's vague reasoning, the Court can only guess whether the ALJ believed that these opinions were generally accurate at the time they were issued.

To the extent that the ALJ found these opinions persuasive and concluded that it was only after their issuance that Plaintiff gained the ability to work in a full-time job where he would be frequently stooping, frequently lifting and carrying 25 pounds and occasionally lifting up to 50 pounds, the ALJ did not identify the specific evidence on which she relied in making that conclusion either. The ALJ noted that there was evidence in June 2012 that Plaintiff, through physical therapy, had "improved range of motion, strength, and mobility of trunk." [R. 27.] However, this improvement preceded the issuance of the opinions the ALJ discussed. [R. 170, 719, 724, 825.] The ALJ also noted that Plaintiff reported a 30% improvement in his pain and activities of daily living following steroid injections in January 2014 and April 2014 and that he stated he benefited from medication and using a TENS unit [R. 26, 27, 29, 30; *see* R. 752, 754, 756], but the ALJ points to no evidence that such improvements were more than temporary or that Plaintiff's

---

[6] The ALJ stated that the fact that Dr. Kaplan did not address Plaintiff's ability to sit, stand, and walk "render[ed] his opinions less persuasive" [R. 29], but the ALJ did not explain why that would be, and it is not apparent to the Court why that would be the case.

gains translated into a sufficient increase in the amount of weight Plaintiff could lift, from the floor to the waist and otherwise. In any event, to the extent that Plaintiff made significant improvements in 2014, that was well into his disability period, which began on August 24, 2012. [R. 17.] Moreover, he made any such improvements while resting in his recliner most of the day instead of working. [E.g., R. 64–65.] Even assuming that Plaintiff was ever able to lift 50 pounds during the relevant period—and no medical opinion stated that he could—the ALJ points to no evidence that Plaintiff would have been able to maintain his peak level of functionality if he had begun working full time in a job that required him to frequently lift up to 25 pounds and occasionally lift up to 50 pounds. In the absence of such evidence, it appears the ALJ may simply have offered and relied on her own, unauthorized medical opinion. *See, e.g., Hutzell v. Commissioner*, No. 8:19-cv-02361-TMC-JDA, 2020 WL 3064772, at *10 (D.S.C. May 14, 2020) ("To the extent that the ALJ formed her own judgment that a person with adequate ability to perform the tasks would also be able to sustain that performance, it appears that the ALJ was offering her own medical opinion and then using her unauthorized medical opinion as the basis for rejecting [the medical sources'] contrary opinions."), *Report and Recommendation adopted by* 2020 WL 3060460 (D.S.C. June 9, 2020).

Resolving Plaintiff's functionality in the specific areas described in the opinions the ALJ discussed was critical to formulating Plaintiff's RFC. *See, e.g., Drake v. Kijakazi*, No. 5:22-4119-RMG, 2024 WL 33977, at *2 (D.S.C. Jan. 3, 2024) (noting that findings that the plaintiff could not tolerate any floor-to-waist lifting and two-hand carrying of items was "significant because a basic element of sedentary work 'involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and

14

small tools'" (quoting 20 C.F.R. § 416.967(a)); *see also* 20 C.F.R. § 404.1567(c) ("If someone can do medium work, we determine that he or she can also do sedentary and light work.").  With the ALJ not having explained why she found Plaintiff had the functionality reflected in her assessed RFC—including not pointing to a single medical opinion stating that Plaintiff could lift up to 50 pounds—she has failed to construct a logical bridge between the evidence and her RFC, and this Court cannot conclude that substantial evidence supports the decision.  *See Simpkins v. Berryhill,* No. 5:18-CV-256-BO, 2019 WL 2060935, at *2 (E.D.N.C. May 9, 2019) (reversing the ALJ's denial of benefits, which was based on a determination that the claimant could perform medium work with certain limitations, when the ALJ provided no logical bridge for concluding that the claimant could lift up to 50 pounds and frequently lift and carry objects up to 25 pounds during an eight-hour work day). The Court therefore sustains Plaintiff's objection, reverses the ALJ's decision, and remands to the Commissioner for further proceedings consistent with this Order.

**Remaining Allegations of Error**

Because the Court finds that the ALJ's failure to construct a logical bridge between the evidence in the record and the ALJ's RFC is a sufficient basis to remand this matter for further consideration, the Court declines to address Plaintiff's remaining objections and allegations.  *See Hutzell*, 2020 WL 3064772, at *11.  However, on remand, the ALJ should consider Plaintiff's remaining allegations of error.

<u>**CONCLUSION**</u>

The Court has conducted a de novo review of the Report, the record, and the applicable law.  Upon such review, the Court rejects the Report and Recommendation of

the Magistrate Judge.  Accordingly, the decision of the Commissioner is REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case is REMANDED to the Commissioner for further administrative action consistent with this Order.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

September 30, 2024
Charleston, South Carolina